UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:  SCOTT GLENN NEWCOM

SCOTT GLENN NEWCOM,

       Appellant,

v.                                                  Case No.:  2:19-cv-903-FtM-38

U.S. COMMODITY FUTURES
TRADING COMMISSION,

       Appellee.
                                      /

## **OPINION AND ORDER**[1]

Before the Court is Scott Glenn Newcom's appeal of the Bankruptcy Court's Order (1) Granting Plaintiff's Amended Renewed Motion for Summary Judgment and (2) Denying Defendant's Motion for Summary Judgment (Doc. 5-2).

Newcom filed a Chapter 7 bankruptcy petition on February 15, 2019.  The U.S. Commodity Futures Trading Commission (CFTC) then filed an adversary complaint (Doc. 5-6) to establish the nondischargeability of a restitution debt established by a Sanctions Order (Doc. 5-7) the CFTC entered on March 27, 2013.  The Sanctions Order resolved a CFTC administrative proceeding against Newcom, Anthony Pulieri, Joseph Glenn Commodities LLC, and JGCF LLC for selling illegal off-exchange futures contracts and defrauding investors.  Newcom and the other respondents submitted an Offer of

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees.  By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them.  The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

Settlement, consenting to entry of the Sanctions Order, which includes the following factual findings:

> In November of 2010, Joseph Glenn Commodities LLC, Newcom, and Pulieri entered into an agreement with Hunter Wise [Commodities LLC] to act as one of Hunter Wise's dealers.  Subsequently, the Respondents solicited retail customers, generally by telephone or through their website, to enter into Retail Commodity Transactions as part of a "leveraged program."  Respondents represented to prospective customers that: (1) the customer could purchase physical commodities, including gold, silver, copper, platinum, or palladium, by paying as little as 20% of the purchase price; (2) customers would receive a loan for the remaining portion of the purchase price on which the customer would be charged interest; and (3) upon confirmation of the customer's purchase, the physical commodity the customer purchased would be stored at an independent depository on the customer's behalf in an account in the customer's name  These representations were based upon representations Hunter Wise made to Respondents about Hunter Wise's operations.  However, when retail customers placed orders to enter into Retail Commodity Transactions, the Respondents did not purchase physical commodities on the customers' behalf, provide loans to customers for the remaining portion of the purchase price, or store any physical commodities for customers.  Instead, the Respondents simply passed all the details of the purchase, customer payments, and financing on to Hunter Wise, whose existence the Respondents did not disclose to retail customers…
>
> The Respondents' retail customers never owned, possessed, or received title to the physical commodities that they believed they purchased, no funds were expended by Respondents or Hunter Wise to purchase physical commodities for the customers, and no physical commodities were stored for the customers.
>
> The Respondents misrepresented the potential profits and past performance of the Retail Commodity Transactions.  Respondents informed potential customers that they would achieve rates of return "far beyond" what they had ever seen before and that Respondents had always made money for their clients in the past, despite the fact that a majority of their customers lost money.
>
> The Respondents also failed to disclose the commissions, service, and interest fees to potential customers.  They also failed to inform potential customers that over 95% of their previous customers lost money after the assessment of commission, service, and interest fees, which sometimes totaled as much as 33% of the customers' initial investments.

(Doc. 5-7 at 3-4). Based on these facts and the Respondents' consent, the Sanctions Order imposed a restitution obligation of $635,457.44 jointly and severally on the Respondents. Schedule A of the Order listed the amounts of restitution owed to each customer. And the Order appointed the National Futures Association (NFA) to collect the restitution debt and distribute it to the Respondents' customers.

In a motion for summary judgment, Newcom challenged the existence of an underlying debt because any action to collect restitution is barred by a state or federal statute of limitations. CFTC also moved for summary judgment, arguing the Sanctions Order conclusively established that the restitution debt is nondischargeable because it is for money obtained by false pretenses, false representations, or actual fraud. The Bankruptcy Court held (1) enforcement of the sanctions order is not barred by a limitations period, (2) the Sanctions Order has collateral estoppel effect, and (3) the restitution debt is nondischargeable.

## Discussion

"Like a district court, a bankruptcy court may only grant summary judgment where there is no genuine issue of material fact." *In re Optical Techs., Inc.*, 246 F.3d 1332, 1334 (11th Cir. 2001). This Court reviews the Bankruptcy Court's grant of summary judgment de novo. *Id.*

### A. Statute of limitations

Newcom raises two challenges to the timeliness of CFTC's adversary complaint: (1) the complaint itself is barred by the statute of limitations, and (2) an action to enforce the debt is barred by the statute of limitations, so there is no debt to declare nondischargeable.

3

The only statute of limitations on the adversary complaint itself is Federal Rule of Bankruptcy Procedure 4007(c), which required CFTC to file its complaint no later than sixty days after the first date set for the meeting of creditors.  *See In re McKendry*, 40 F.3d 331, 336 (10th Cir. 1994).  The meeting of creditors in this case was set for March 26, 2019, so CFTC's complaint—filed on March 25, 2019—was timely.

Newcom next argues that despite the timeliness of the complaint itself, he is entitled to summary judgment because the statute of limitations ran on the underlying debt.  This is Newcom's theory:  (1) CFTC can only enforce the restitution debt by suing him in federal court, and (2) an action to enforce the debt is barred by either (a) Florida's four- or five-year statute of limitation or (b) a federal five-years statute of limitation, so (3) the nondischargeability claim must be summarily dismissed.  CFTC counters that the Sanctions Order is a valid and enforceable judgment not subject to any statute of limitations.

> The Bankruptcy Court agreed with CFTC for three reasons:
>
> First, it is not clear that any state or federal statute of limitations applies to an action to collect a federal administrative judgment, and Debtor has not provided any case authority in which such a limitations period has been applied to an order imposing sanctions for violating the Act.
>
> Second, 31 U.S.C. § 3716, part of the Federal Debt Collection Act, provides that a federal agency may collect a claim from a person by administrative offset, such as by offsetting a tax refund owed to a debtor against the amount due from the debtor.  A "claim" is an amount that has been determined by a government official to be owed to the United States, and includes "any amount the United States is authorized by statute to collect for the benefit of any person."
>
> And third, 31 U.S.C. § 3716(e) provides that, notwithstanding any other state law, "no limitation on the period within which an offset may be initiated or taken pursuant to this section shall be effective."

(Doc. 5-2 at 11) (footnotes omitted).

Newcom remains unable to show that any Florida or federal statute terminates CFTC's ability to enforce the Sanctions Order. Applying the Florida statutes of limitations is a non-starter. "It is well settled that the United States is not bound by state statutes of limitation or subject to the defense or laches in enforcing its rights." *United States v. Summerlin*, 310 U.S. 414, 416 (1940). The federal statute of limitations Newcom cites—28 U.S.C. § 2462—is trickier. It requires "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture" to be "commenced within five years from the date when the claim first accrued[.]" 28 U.S.C. § 2462. The applicability of § 2462 is questionable for two reasons. First, it is not clear whether the restitution debt is a "penalty" under § 2462.[2] Second, it is not clear whether the deadline applies to the start of the administrative proceeding, an action to enforce the administrative order, or both. The Court need not decide these issues because even if CFTC cannot sue Newcom, it can enforce the restitution debt through other means.

The Debt Collection Improvement Act of 1982, 31 U.S.C. § 3701 *et seq.*, allows federal agencies like CFTC to collect claims with non-litigation tools like administrative offset—the practice of withholding federal payments (like tax refunds) in satisfaction of a debt. Administrative offsets are not subject to statutes of limitation. 31 U.S.C. § 3716(e)(1). Newcom argues CFTC cannot use administrative offsets to collect the

---

[2] The Supreme Court has held that disgorgement in the securities-enforcement context is a "penalty" under 28 U.S.C. § 2462. *Kokesh v. S.E.C.*, 137 S. Ct. 1635, 1639 (2017). But disgorgement and restitution are different. Disgorgement is measured by the gains a wrongdoer receives in connection with a violation and is often paid to the government, while restitution is measured by the amount of the victims' loss and ultimately flows to the victims. 7 U.S.C. § 13a-1.

restitution debt because it falls outside the statutory definition of "claim." 31 U.S.C. § 3701(b)(1) defines "claim" and provides a non-exhaustive list of examples:

> any amount of funds or property that has been determined by an appropriate official of the Federal Government to be owed to the United States by a person, organization, or entity other than another Federal agency. A claim includes, without limitation…(D) any amount the United States is authorized by statute to collect for the benefit of any person,…(F) any fines or penalties assessed by an agency; and (G) other amounts of money or property owed to the Government.

Newcom argues the restitution debt is not "owed to the United States" because it is owed to his customers, not to CTFC, and no statute gives CFTC authority to collect the debt on behalf of the customers. The Court disagrees for three reasons.

First, the statutory scheme suggests otherwise. Congress empowered CFTC to use administrative proceedings as an alternative to civil actions in district court. And Congress explicitly authorized CFTC to require restitution through those proceedings. 7 U.S.C. § 9(10)(D). The Court finds it unlikely Congress intended to make a restitution order in an administrative proceeding unenforceable unless CFTC *also* filed a civil action.

Second, Congress authorized CFTC to promulgate rules and regulations to govern its procedures, 7 U.S.C. § 2(a)(12), and the regulations contemplate CFTC's collection of restitution debts. 17 C.F.R. § 10.112 requires CFTC, when ordering restitution, to "establish in writing a procedure for…obtaining funds to be paid as restitution from the party and distributing such funds to qualified claimants."

Third, the language of the Sanctions Order bolsters CFTC's right to collect the restitution debt by administrative offset. In the Order, CFTC appointed the National Futures Association (NFA) to collect and distribute payments of the restitution debt, and it gave the NFA authority to treat *de minimis* payments as civil penalty payments and

6

remit them to CFTC. And while the Order does not explicitly mention collection of the restitution by administrative offset, it accounts for the possibility:

> To the extent any funds accrue to the U.S. Treasury for satisfaction of Respondents' Liquidated Balance and Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth in this Order.

(Doc. 5-7 at 11).

In sum, CFTC can collect the restitution debt by referring it to the Department of the Treasury for administrative offset. So whether or not a civil action is time-barred, the debt remains valid and enforceable.

## B. Collateral Estoppel

Newcom next argues the Bankruptcy Court erred by giving the Sanctions Order collateral estoppel effect.

Agency decisions can have preclusive effect. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138 (2015). And collateral estoppel can bar the relitigation of issues in bankruptcy dischargeability proceedings. *In re Loder*, 796 F. App'x 698, 701 (11th Cir. 2020). Normally, "[c]ollateral estoppel requires that: (1) the issue be identical in both the prior and current action; (2) the issue was actually litigated; (3) the determination of the issue was critical and necessary to the judgment in the prior action; and (4) the burden of persuasion in the subsequent action not be significantly heavier." *In re Bilzerian*, 153 F.3d 1278, 1281 (11th Cir. 1998). But when the prior action was resolved by consent, the "actually litigated" element is satisfied if "the parties specifically agreed to preclude a given issue in the consent decree." *Richardson v. Ala. State Bd. of Educ.*, 935 F.2d 1240, 1245 (11th Cir. 1991). Newcom challenges the first two elements.

   *1. Identical issues*

7

Newcom argues the Bankruptcy Court erred in finding this element satisfied because the requirements for fraud liability under the Commodities Exchange Act (CEA) are different from the requirements for proving nondischargeability based on fraud. To establish fraud liability under the CEA, CFTC must prove three elements: "(1) the making of a misrepresentation, misleading statement, or a deceptive omission; (2) scienter; and (3) materiality." *CFTC v. R.J. Fitzgerald & Co., Inc.*, 310 F.3d 1321, 1328 (11th Cir. 2002). The bankruptcy code provides that debts obtained by "false pretenses, a false representation, or actual fraud" are not dischargeable. 11 U.S.C. § 523(a)(2)(A). Courts considering § 523(a)(2)(A) generally require creditors to prove the traditional elements of common law fraud: (1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation. *Bilzerian*, 153 F.3d at 1281.

The elements of the two claims need not match up perfectly for collateral estoppel to apply because the issues that must be identical are the factual findings, not the legal conclusions. *In re Halpern*, 810 F.2d 1061, 1063-64 (11th Cir. 1987). "Because dischargeability of a debt does not arise in non-bankruptcy proceedings, courts look to the foundation of the prior fraud judgment for a commonality with the dischargeability exception." *In re Jones*, 611 B.R. 685, 696 (Bankr. M.D. Ala. 2020); see also *Smith v. Bayer Corp.*, 564 U.S. 299, 312 n.9 (2011) ("Minor variations in the application of what is in essence the same legal standard do not defeat preclusion").

The Sanctions Order decided the first dischargeability element—a false representation made to deceive—when it established that Newcom made false statements to sell commodity investments to his customers. The Sanctions Order's

8

materiality findings satisfy the second element—reliance. "A representation or omission is 'material' if a reasonable investor would consider it important in deciding whether to make an investment." *R.J. Fitzgerald*, 310 F.3d at 1328-29. The Eleventh Circuit has held that "materiality" in the securities context "satisfies the requirement for actual reliance necessary to apply collateral estoppel in a § 523(a)(2)(A) case." *Bilzerian*, 153 F.3d at 1282. The Sanctions Order satisfied the third fraud element by finding the customers' reliance justified: "A reasonable customer would consider the profitability of the investment and related fees material to their decision to invest with Respondents." (Doc. 5-7 at 7). Finally, the Sanctions Order satisfied the fourth element—resulting loss—by identifying 43 customers who were harmed by Newcom's misrepresentations and ordering that Newcom make them whole through restitution. In fact, Newcom himself acknowledges the remedial nature of the restitution debt. (Doc. 16 at 28).

   2. *Intent to preclude*

"The central inquiry in determining the preclusive effect of a consent decree is the intention of the parties as manifested in the decree or otherwise." *Richardson*, 935 F.2d at 1245 (quoting *Barber v. Int'l Brotherhood of Boilermakers*, 778 F.2d 750, 757 (11th Cir. 1985)). One way the parties' intent can manifest is through the specificity of the consent decree's factual findings. *Halpern*, 810 F.2d at 1064. As in *Halpern*, the factual findings in the Sanctions Order (block-quoted above) "are sufficiently detailed to leave little doubt as to their meaning." *Id.*

Yet Newcom disputes that the parties intended for the Sanctions Order to have preclusive effect by contrasting the following language with other CFTC consent orders that are more explicit on the issue:

9

> Respondent consents to the entry of this Order and to the use of these findings in this proceeding and in any other proceeding brought by the Commission or to which the Commission is a party; provided, however, that Respondents do not consent to the use of the Offer, or the findings or conclusions in this Order consented to in the Offer, as the sole basis for any other proceeding brought by the Commission, other than in a proceeding in bankruptcy or to enforce the terms of this Order.

(Doc. 5-7 at 2). Newcom's proposed interpretation of this language would render it meaningless. He argues that without his consent to CFTC's "use" of the Order, it would be inadmissible because it is a settlement. But Newcom cites no authority to support his claim.[3] Federal Rule of Evidence 408 generally prohibits the use of settlement offers and negotiations, but not final administrative orders like the Sanctions Order. Newcom also contends his consent to CFTC's use of the Order as the "sole basis" in a bankruptcy proceeding just means CFTC can introduce the Order without alleging additional grounds for dischargeability. But CFTC does not need Newcom's permission to forgo additional evidence.

Other parts of the Sanctions Order help illustrate the parties' intent on its preclusive effect. Section V of the Order states that Respondents "submitted an Offer in which they, without admitting or denying the findings and conclusions[,]" waived judicial review by any court and consented to entry of the Order that "makes findings by the Commission that Respondents violated Sections 4(a) and (b) of the [CEA.]" (Doc. 5-7 at 9-10). Newcom also agreed not to

> take any action or make any public statement denying, directly or indirectly, any findings or conclusions in th[e Sanctions] Order or creating, or tending to create, the impression that th[e] Order is without a factual basis; provided, however, that nothing in this provision shall affect Respondents': (i)

---

[3] Newcom cites *In re Covenant Partners, L.P.*, Bankr. Case No. 14-17568, 2017 WL 838637 (Bankr. E.D. Pa. 2018) for the proposition that SEC settlements are inadmissible, but the case is silent on that issue.

> testimonial obligations; or (ii) right to take legal positions in other proceedings to which the Commission is not a party.

(Doc. 5-7 at 12).

Considering the specificity of the Sanctions Order's factual findings and the language quoted above, the Court finds that although Newcom reserved the right to take contrary legal positions in some situations, the parties intended for the Sanctions Order to be a final adjudication of its factual findings. The second element of collateral estoppel is thus satisfied. See *Halpern*, 810 F.2d at 1064-65.

Newcom does not challenge the final two elements of collateral estoppel, and they are easily met. The factual determinations at issue were critical and necessary to support the Sanctions Order's conclusion that Newcom violated the SEA. And the burden of proof here is not significantly higher than CFTC's burden in the administrative proceeding. Since all four elements are satisfied, the Sanctions Order has collateral estoppel effect.

### C. Summary judgment

The facts established in the Sanctions Order satisfy the requirements for nondischargeability, so summary judgment for CFTC is appropriate. Again, to establish nondischargeability under § 523(a)(2)(A), CFTC must show: (1) the debtor made a false representation to deceive the creditor, (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation. *Bilzerian*, 153 F.3d at 1281.

The Sanctions Order establishes that Newcom made false representation to deceive his customers. Newcom solicited money from the customers by misrepresenting the nature, potential profits, and past performance of the investments he peddled. The Sanctions Order's relevant findings are block-quoted above. In short, Newcom sold his

11

customers the opportunity to purchase physical commodities by paying 20% of the price and receiving a loan for the remaining balance. And he claimed he always made money for his clients in the past, though over 95% of them lost money. In reality, Newcom simply passed the customer payments on to another company, the customers never owned physical commodities, and much of their money went towards undisclosed fees.

The Sanctions Order must also show actual and justifiable reliance. Although the Order does not make findings on the actual reliance of each customer, it is inconceivable that they did not rely on Newcom's representations about the nature and expected profits of the transactions when choosing to invest. For their reliance to be justifiable, the customers' "conduct must not be so utterly unreasonable, in the light of the information apparent to [them], that the law may properly say that [their] loss is [their] own responsibility.'" *In re Vann*, 67 F.3d 277, 283 (11th Cir. 1995) (quoting W. Page Keeton, *Prosser & Keeton on Torts* § 108, at 749 (5th ed. 1984)); *see also Field v. Mans*, 516 U.S. 59 (1995). The Sanctions Order's finding that "[a] reasonable customer would consider the profitability of the investment and related fees material to their decision to invest" establishes that reliance was justifiable. (Doc. 5-7 at 7).

The final nondischargeability element requires CFTC to show a causal link between Newcom's misrepresentations and the customer's loss. *In re Aman*, 492 B.R. 550, 564 (Bankr. M.D. Fla. 2010). The theory of causation is obvious: the customers sent money to Newcom (or an entity he controlled) but did not receive what they bargained for. The Sanctions Order's Restitution Schedule (Doc. 5-9) states the amount of restitution due to each customer. And restitution under the CEA is measured by the amount of losses proximately caused by a violation. 7 U.S.C. § 13a-1(d)(3)(A). The

Sanctions Order thus establishes that the restitution debt reflects losses caused by Newcom's misrepresentations.

Accordingly, it is now

**ORDERED:**

The decision of the Bankruptcy Court is **AFFIRMED**. The Clerk is directed to enter judgment accordingly, transmit a copy of this Opinion and Order and the Judgment to the Clerk of the Bankruptcy Court, terminate the appeal, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 16th day of July, 2020.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:
Honorable Caryl E. Delano
All Parties of Record

13